Nicholas W. Armstrong
Cal. Bar No. 270963
PRICE ARMSTRONG LLC
2226 1st Ave. S Suite 105
Birmingham, AL 35233
Phone: 205.706.7517
Fax: 205.209.9588
Email: nick@pricearmstrong.com

Lucas Williams (Cal. Bar No. 264518)
WILLIAMS ENVIRONMENTAL LAW
2030 Addison Street, Suite 410
Berkeley, CA  94704
Phone: 510.548.2060
Fax: 510.548.7080
Email: lucas@williams-envirolaw.com

*Attorneys for Plaintiff*
JON HART

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON HART,  on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>TWC PRODUCT AND TECHNOLOGY LLC,<br><br>                 Defendant. | Case No. 3:20-cv-3842<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br>1. Violation of Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq*)<br>2. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*)<br>3. Unjust Enrichment |

1

## CLASS ACTION COMPLAINT

2      COMES NOW the Plaintiff, Jon Hart, individually and on behalf of a class of all persons

3   and entities in California who are similarly situated, and files this class action complaint against

4   the Defendant TWC Product and Technology LLC ("TWC" or "Defendant").

5

## NATURE OF THE CASE

6      1.      The location targeting industry in America is a $21 billion business.  Personal and

7   private information about where consumers live, enjoy recreational activities, shop, and dine,

8   and the specific hours at which they do each of those activities is of almost immeasurable value

9   to marketers and advertisers.  Under the guise of providing precise and real-time weather

10  information through a mobile weather application, or "App", Defendant in this case have for

11  years been involved in a multi-million dollar scheme to collect, maintain and then profit of

12  consumers geolocation data, all without their knowledge.

13     2.      TWC Product and Technology, LLC is the internet, mobile, and cloud based arm

14  of the popular "The Weather Channel" television station.   TWC is owned and operated by IBM.

15  A significant part of TWC's business is its Weather Channel App, which is used by tens of

16  millions of American consumers every month.  Defendants boast that the Weather Channel App

17  is most downloaded weather app in the world.

18     3.      For years now, TWC has been collecting and maintaining Weather Channel App

19  users' private and personal geolocation data.

20     4.      Until recently, TWC never did anything at all to disclose to App users the

21  specificity with which it tracked users' geolocation, that it maintained this data, or that it directly

22  profited from App user's geolocation data by transmitting or selling that data to affiliates and

23  third parties for advertising and marketing purposes.  Instead, TWC told users that their data

24  would only be used for the user's benefit to provide them with personalized local weather

25  information. Nothing in the description of the App or prompts to allow geolocation tracking

26  alerted users to the extent and purpose of the location tracking function of the App.  As a result

27

of lawsuits and in an attempt to correct its past misrepresentations and deceptions, TWC has drastically changed the disclosures it makes to App users regarding the purpose for which it collects geolocation data.

5. Before recent changes, TWC fraudulently and deceptively induced Weather Channel App users to grant Defendants access to their personal geolocation data under the guise of providing better weather information, TWC then tracked users' locations at all times, day and night, 365 days a year.  TWC did not disclose to users that it maintains this data, much less that it directly profits from user's geolocation data by transmitting or selling that data to third parties for advertising and marketing purposes. By TWC's own admission, TWC's primary revenue source comes from collecting, maintaining and then profiting from user location data.  In short, unbeknownst to Weather Channel App user's, TWC considers itself "a location data company powered by the weather."

6. This case seeks to hold  TWC accountable for its  years-long practice of tracking and selling the physical locations of the users of its mobile weather application, without those users' permission. Under the guise of providing precise and real-time weather information through a mobile weather application, or "app", TWC instead tracked and collected data on its users' locations–from their homes to their places of work, their schools, their daycares, and their churches–in a multimillion-dollar scheme to sell that data to third parties and business partners, all without its users' knowledge.

7. TWC's conduct in fraudulently collecting, maintaining, and then profiting off of users' valuable geolocation data constitutes a violation of Article I, Section 1 of the California Constitution, California Civil Code § 1750 *et seq*., and is a violation of California Business & Professional Code § 17200 *et seq*. TWC's conduct also constitutes unjust enrichment. Finally, because of TWC's conduct, Plaintiff and the class members are entitled to declaratory judgment.

**PARTIES**

8. Plaintiff Jon Hart is an adult resident of California. He downloaded the App, has

used it often and continually, and has been damaged by TWC's unlawful, unfair, and fraudulent acquisition and use of her geolocation data.

9.     Defendant TWC is a Delaware corporation with its headquarters in Atlanta, Georgia. TWC owns and operates the Weather Channel App, which is available for download and use on all major mobile platforms, including Apple and Android. TWC does business in the State of California and in this judicial district, having provided its Weather Channel App for download for California consumers like the Plaintiff. TWC is owned by IBM.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Defendant is a citizen of a state other than the state of which Plaintiff is a citizen, and Plaintiff on behalf of himself and the putative class seeks more than $5,000,000, exclusive of interest and costs.  More than one hundred members are included in the putative class.

11.     Venue in this case is proper under 28 U.S.C. § 1391 and  28 U.S.C. § 1441 in the United States Court for the Northern District of California, in that a substantial portion of TWC's conduct which forms the basis of this action occurred in this judicial district. TWC does business in this judicial district and has received and continues to receive substantial revenue and profits from the unlawful, unfair, and fraudulent acquisition and use of location data in this judicial district.  TWC's conduct directly damaged individuals and entities which reside in this judicial district, including Plaintiff, and TWC did, or reasonably should have, anticipated that this conduct would subject them to the jurisdiction of this Court.  TWC was subject to personal jurisdiction in this judicial district at the time this action was commenced and are deemed to reside in this judicial district.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.   Plaintiff asserts a class of individuals and entities throughout

California who were harmed by TWC's deceptive conduct.  That class is defined as:

> All persons and entities who reside in California who (1) downloaded the Weather Channel App and (2) Granted TWC access to the user's geolocation data before January 25, 2019.

13.     Excluded from the class are any person or entity currently in bankruptcy, any person or entity whose obligations have been discharged in bankruptcy, any employee or affiliate of TWC, and any judicial officer who has presided over this case.

14.     Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class which does not require individual inquiry to determine liability.

15.     All information necessary to identify the class members and the damages class members incurred is in TWC's possession or control.

### NUMEROSITY

16.     The exact number of class members is unknown to Plaintiff at this time, but is in excess of one thousand and can be ascertained through appropriate discovery.

### EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

17.     There are common questions of law and fact of general interest to the class. These common questions of law and fact predominate over any questions affecting only individual members of the classes.  Among these common questions are the following:

a.   Whether TWC disclosed to Weather Channel App users that it would collect, maintain, and sell their geolocation data.

b.   Whether TWC's process for inducing Weather Channel App users to grant TWC permission to access their geolocation data was deceptive and unfair;

c.   Whether TWC'S representations to Weather Channel App users that the purpose for accessing users' geolocation data was to provide users with personalized and local weather information is deceptive and unfair;

d.   Whether TWC'S representations to Weather Channel App users that the

purpose for accessing users' geolocation data was to provide users with personalized and local weather information is fraudulent;

e.  Whether TWC disclosed to Weather Channel App users that TWC is "a location data company powered by the weather;"

f.  Whether TWC disclosed to Weather Channel App users that it sells or otherwise profits from disseminating users' geolocation data to affiliates and third parties;

g.  Whether TWC violated Article I, Section 1 of the California Constitution.

h.  Whether TWC fraudulently, deceptively, or unfairly induced Weather Channel App users to grant TWC access to their geolocation data in violation of Cal. Bus. & Prof. Code § 17200 *et seq*:

i.  Whether TWC's conduct is fraudulent under Cal. Bus. & Prof. Code § 17200 *et seq*.

j.  Whether TWC's conduct fraudulently, deceptively, or unfairly induced Weather Channel App users to grant TWC access to their geolocation data in violation of Cal. Civ. Code § 1750 *et seq*.

k.  Whether TWC was unjustly enriched through its conduct.

l.  Whether declaratory judgment is proper.

**TYPICALITY**

18.  The claims of the named Plaintiff are typical of the claims of the class.  He was subject to, and harmed by, the same uniform conduct that each and every member of the class was subject to and harmed by.

**ADEQUATE REPRESENTATION**

19.  Plaintiff will fairly and adequately protect the interests of the members of the classes and have no interest antagonistic to those of other class members.  Plaintiff has retained class counsel competent to prosecute class actions, and such class counsel are financially able to

1    represent the classes.

2                                    **SUPERIORITY**

3           20.    The class action device is superior to other available methods for the fair and

4    efficient adjudication of this controversy since individual joinder of all members of the classes

5    is impracticable.  The interests of judicial economy favor adjudicating the claims for the Plaintiff

6    classes rather than for the Plaintiff and other class members on an individual basis.

7           21.    Questions of law and fact predominate over any questions affecting only

8    individual members.

9                              **<u>FACTUAL ALLEGATIONS</u>**

10          22.    The Weather Channel App is a mobile application ostensibly designed to give

11   users weather forecasts, alerts, and other real-time weather information. It is available for

12   download on Andriod and Apple devices. It is a "free" download, although as with many apps,

13   an "ad-free" version is offered for a small fee.

14          23.    As a result of lawsuits and in an attempt to correct its past misrepresentations and

15   deceptions, TWC has drastically changed the disclosures it makes to App users regarding the

16   purpose for which it collects geolocation data.

17          24.    However, these corrections did nothing to cure the deceptive, fraudulent, and

18   unfair conduct on the part of TWC that induced Plaintiff and class members to allow TWC access

19   to their location and to maintain it and share it with third parties in the first place. In fact, TWC

20   is still utilizing the ill-gotten data for these individuals and profiting from it.

21          25.    Before these changes were made, TWC never did anything at all to disclose to

22   App users the extent to which it tracked users' location, that it maintained this data, much less

23   that it directly profited from App user's geolocation data by transmitting or selling that data to

24   third parties for advertising and marketing purposes.  Instead, TWC told users that their data

25   would only be used for the user's benefit to provide them with personalized local weather

26   information. Nothing in the description of the App or prompts to allow geolocation tracking

27

alerted users to the extent and purpose of the location tracking function of the App.

26.     As demonstrated herein, the Weather Channel App's actual purpose was, and remains, to collect, maintain, and then provides or sells users' geolocation data to affiliates and other third parties, all without notifying users that it was doing so.

27.     Plaintiff and class members, who allowed TWC to collect, maintain, and share their geolocation data before changes to disclosures, were harmed by TWC's conduct. Their data was collected, maintained and shared without their consent. To this day TWC continues to maintain this ill-gotten data and continues to share it with third parties.

**Defendant Did Not Disclose To Users That It Collects Their Geolocation Data And Did Not Obtain Their Consent To Give That Data To Third Parties**

28.     Immediately upon opening the Weather Channel App for the first time, the app asked the user for permission to access the user's "location."  Regardless of the device being used, this request did not inform the user that TWC would be tracking the users every move or that this information will be used for any purpose other than providing the user information about the weather.  Specifically, the request to access the user's location on Apple devices simply stated that granting access will result in "personalized local weather data, alerts, and forecasts." The request on Android devices simply said "Allow The Weather Channel to access this device's location?" with the option to "Deny" or "Allow."

29.     The consent process employed by the Weather Channel App made absolutely no reference to any additional information the user should read or review prior to providing consent to geolocation tracking.  Nowhere in the consent process was the user confronted with the information that their minute-by-minute geolocation data will be broadly disseminated by TWC and that TWC would make millions disseminating users' geolocation data.  Importantly, the consent process did not direct users to any "Privacy Policy" or "Privacy Settings", so users had no reason to search those voluminous documents for any vague discussions of geolocation data that might be buried within those documents.

30.     The consent process did not involve disclosures that the user would be subjected

to targeted advertisements based on their captured geolocation data that would be transferred to affiliates and third parties.

31.    The consent process did not involve disclosing that, in addition to simply capturing users' geolocation data and transferring it, TWC would maintain that data for an indefinite period.

32.    Defendants failure to notify users that it is in the business of collecting and selling their personal geolocation data is intentional.  TWC executives have admitted that if consumers knew of the Weather Channel App's true purpose, consumers would be alarmed.

### The Data That TWC Collected And Still Collects

33.    Importantly, TWC did not and does not merely collect users' city or zip code. Instead, TWC tracks, collects, and **maintains** users' precise location and movements on a minute-by-minute and sometimes second-by-second basis, regardless of whether the user currently has the Weather Channel App open.  Nowhere in the consent process did TWC disclose that it would be doing anything other than identifying where a user is generally located for the purpose of providing more accurate weather information.

34.    The volume of data TWC collected and continues to collect is immense.  TWC has boasted that it is able to track users locations and movements with "unmatched accuracy and precision" and even speculated that it may possess the world's largest trove of consumer geolocation data. (*See* David Kaplan, The Weather Company Rolls Out Location Marketing Platform to Anticipate Consumers' Movements, GeoMarketing (Oct. 13, 2016)).

### TWC's Transmission Of Users' Geolocation Data to Third Parties

35.    By failing to disclose the true purpose been their location tracking, TWC was able to induce the vast majority of Weather Channel App uses to give Defendants access to their geolocation data, day and night, 24 hours a day, 365 days a year.

36.    TWC then sold or otherwise transmitted virtually all of users' personal geolocation data to affiliates or third parties, including private equity firms and hedge funds,

without their permission and continues to do so.  Some of those third parties are indirectly affiliated with TWC, while others are not, but in both circumstances, TWC financially benefited and continues to benefit, either directly or indirectly, from the sale or other dissemination of this valuable information. TWC has even gone as far as to sell this information to hedge funds, who used the data to monitor certain areas of consumer spending.  TWC, along with its parent IBM, has even developed it own location driven marketing platform, "JOURNEYfx," through which TWC, IBM, and others further exploit the inherent value of this data.

**Defendant's Conduct Has Resulted In Damages**

37.    As alleged above, Plaintiff's and the class members' geolocation data is extremely valuable to TWC. That data also has value to the Plaintiff and members of the putative class and by capturing it, transferring it to third parties, and maintaining it without the consent of Plaintiff and the members of the class, Defendant has decreased that value in several ways.

*Damage To Plaintiff's and Class Members' Legally-Protected Privacy Interests*

38.    Plaintiff and the class members, like any other persons, have an interest in the privacy of their affairs. Their given location at every minute of the day is something that generally is free from disclosure to non-present third parties. Plaintiff's privacy interests include a reasonable expectation that they will be free from targeted and manipulative marketing based upon their current and constantly-updated location information without receiving sufficient disclosures and consenting to such marketing. This interest in enshrined in Article I, Section 1 of the California Constitution and cases interpreting it creating a freedom to conduct personal activities without constant observation.

39.    By collecting and transferring the geolocation data of Plaintiff and the class members to third parties, TWC has intruded on these interests in a way that cannot be undone; the bell to advertisers as to the user's exact, constantly-updated location has been forever rung. This permanent invasion on the privacy interests of Plaintiff and the class members, without their consent, is a cognizable, compensable injury.

_**Damage to Plaintiff's and Class Members' Legally-Protected Property Interests**_

40.     The geolocation data of the Plaintiff and class members obviously has very high, tangible value in TWC's dealings with advertisers and third parties. Namely, the advertisers pay for that data; giving it value. TWC garners an enormous amount of revenue from the data of Plaintiff and the putative class members because of the insight it provides into their location and, to the properly equipped parties, potential as customers.

41.     TWC, without disclosing such to Plaintiff and the class members, took control over and appropriated this valuable information by capturing it and transmitting it to advertisers and other third parties.

42.     TWC's appropriation of this data works to damage the property interests of Plaintiff and the putative class members. When TWC misled class members into unwittingly surrendering their private data for resale to third parties, it changed the terms of the bargain between TWC and its users, and TWC knew that it had induced its users to surrender something of value–their private data, now a source of profit for TWC–for nothing. By taking more from them than it had disclosed –by taking something for nothing–TWC inflicted immediate and direct damages on its users.

43.     Here, Plaintiff and class members suffered direct property damage through TWC's conduct in deceptively taking and disseminating their private, valuable geolocation data.

44.     By surreptitiously capturing, transferring and maintaining the geolocation data, TWC has taken something of value from Plaintiff and the class members without their consent.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF ARTICLE I SECTION 1 OF THE CALIFORNIA CONSTITUTION**

### **(Cal. Const. art. I, § 1)**

45.     Article I, Section I of the California Constitution creates a privacy right protecting individuals from invasions of their privacy from state and private parties.

46.     Plaintiff and class members had a legally protected privacy interest in their exact

location 24 hours per day, 365 days per year as well as their historical location. They, as individuals have a legally protected interest in conducting personal activities without observation within the confines of social norms. It is not generally accepted that, after receiving disclosures that your geolocation information would be used to provide "personalized local weather data, alerts and forecasts," a person would expect to be tracked constantly, wherever they go. It is also not generally accepted that, given that disclosure, a person would be subject to having their geolocation information maintained for an indefinite period. Further, it is not generally accepted that, given that disclosure, a person's geolocation information would be shared or otherwise transmitted to third parties or TWC affiliates.

47.     Plaintiff and class members had a reasonable expectation of privacy under the circumstances. Given the disclosure that the geolocation tracking was to provide "personalized local weather data, alerts and forecasts" on Apple devices and the total lack of description of any other material facts on Android devices, it was reasonable and within broadly accepted community norms to believe that such information would only be gathered in a general manner to provide weather forecasts for the area. Instead, the location information collected was disturbingly precise. Additionally, given the disclosure, it was reasonable and within broadly accepted community norms to believe that geolocation information would not be stored and maintained indefinitely as such maintenance would not be needed to provide weather forecasts. Further, given the disclosure, it was reasonable and within broadly accepted community norms to believe that the location information would not be shared because that is not necessary for providing weather forecasts.

48.     TWC's invasion of the privacy interests of Plaintiff and the class members was serious. This was not routine commercial behavior akin to collecting a telephone number or address. Instead TWC constantly tracked users' precise movements, stored that information and transmitted it to third parties. This invasion was so comprehensive as to constitute an egregious breach of social norms surround a person's right to conduct personal activities without

observation.

49.     As a result of TWC's invasion of Plaintiff's and class members' privacy, they were damaged in that their legally cognizable right to privacy was encroached upon.

## SECOND CAUSE OF ACTION

### VIOLATION OF CONSUMER LEGAL REMEDIES ACT

### (Cal. Civ. Code § 1750 *et seq.*)

50.     All allegations and paragraphs in this Complaint are incorporated by reference.

51.     California's Consumer Legal Remedies Act prohibits

52.     Plaintiff and class members are "consumers" as defined in Cal. Civ. Code § 1761(d).

53.     TWC is a "person" as defined in Cal. Civ. Code § 1761(c).

54.     TWC provides a "service" through the App as defined in Cal. Civ. Code § 1761(b).

55.     The interaction between Plaintiff and class members on the one hand, and TWC on the other, were "transactions" as defined in Cal. Civ. Code § 1761(e).

56.     The use of the App and location services under the circumstances here was a "sale" under Cal. Civ. Code § 1770(a) because the Plaintiff and class members gave something of value (their geolocation data) in exchange for use of the App.

57.     Through its conduct in representing aspects and characteristics of the App, TWC violated the CLRA.

58.     In failing to disclose that it would share Plaintiff's and class members' geolocation data with affiliates and other third parties, TWC misrepresented it "affiliation, connection, or association with . . . another." Cal. Civ. Code § 1770(a)(2).

59.     In failing to disclose the scope and extent of the geolocation tracking function, that the data would be maintained indefinitely, and that the data would be shared with affiliates and third parties, TWC represented that the App had benefits or uses that it did not have. Cal.

1  Civ. Code § 1770(a)(5).

2      60.    In failing to disclose that, through the App, TWC would constantly collect and

3  continuously maintain Plaintiff's and class members' geolocation data, TWC represented that

4  the App was of a particular quality that it was not. Cal. Civ. Code § 1770(a)(7).

5      61.    In failing to disclose that it would constantly collect, indefinitely maintain, and

6  share with third parties the geolocation data of Plaintiff and the class members, TWC advertised

7  the App with the intent not to sell it as advertised. Cal. Civ. Code § 1770(a)(9).

8      62.    Plaintiff and class members would not have downloaded the App or allowed

9  tracking of their geolocation had they known the shocking scope of the geolocation tracking

10  program, that their data would be indefinitely maintained, or that their data would be shared with

11  affiliates and third parties.

12      63.    Plaintiff provided pre-suit notice via certified mail to TWC as required by Cal.

13  Civ. Code § 1782. TWC has failed to make appropriate correction, repair or replacement or other

14  remedy of its violations in response to this notice.

15      64.    TWC's violations described above were intentional as it made the representations

16  with knowledge that they were false.

17      65.    As a result of the violations described above, Plaintiff and each putative class

18  member have been damaged in that their personal, private, and valuable geolocation data has

19  been collected, is maintained, and has been sold to their parties without their permission. Plaintiff

20  seeks the following forms of relief:

21          a.    Actual damages resulting from the violation.

22          b.    An order enjoining TWC from continuing to maintain, and share the geolocation

23               data of Plaintiff and the class members that was procured in violation of the Act.

24          c.    Restitution of property in the form of the value of the geolocation data of Plaintiff

25               and the Class Members.

26          d.    Punitive damages due to TWC's intentional conduct in knowing violation of the

27

law and the rights of Plaintiff and the Class Members.

e.  Any other relief the court deems proper.

### THIRD CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

66.  All allegations and paragraphs in this Complaint are incorporated by reference.

67.  California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200-17210) prohibits engaging in "any unlawful, unfair, or fraudulent business act or practice." (Cal. Bus. & Prof. Code § 17200).

68.  TWC is a "person" as defined in Cal. Bus. & Prof. Code § 17201.

69.  TWC has violated Cal. Bus. & Prof. Code § 17200 *et seq.* by engaging in unlawful, unfair, and fraudulent business acts and practices.

70.  Plaintiff and Class Members have been harmed by Defendants' fraudulent acts. Such acts include:

     a.  Failing to disclose during the consent process that TWC would collect users' minute-to-minute geolocation data and transmit it to third parties.

     b.  Failing to take any other steps to reasonably notify users that TWC would collect users' minute-to-minute geolocation data and transmit it to third parties.

     c.  Failing to disclose that the true purpose for which TWC collects users' geolocation data is not simply to provide weather data, as TWC affirmatively represented, but is to maintain it and transmit this information to affiliates and third parties for marketing purposes.

     d.  Failing to disclose the complete and shocking scope of TWC's geolocation data collection and high level of distribution of the data obtained.

e.  Failing to disclose that TWC would not only identify users' locations, but maintain historical data as to users' movements.

f.  Deceiving users into believing that TWC collected and continues to collect users' geolocation data in order to provides users with "personalized local weather data, alerts and forecasts."

g.  Failing to disclose to users that TWC collected and continues to collect users' geolocation data for advertising and marketing purposes unrelated to weather.

h.  Failing to disclose that users' geolocation data would be indefinitely maintained.

71.  These fraudulent omissions and misrepresentations were in contrast the specific representations identified above given to Apple device users; namely, that enabling the geolocation tracking function on the App was for the purpose of providing users with "personalized local weather data, alerts and forecasts." This representation was made to every Plaintiff and class member who used the App on an Apple device from the inception of the geolocation tracking function on the App until January 25, 2019.

72.  Plaintiff and class members have also been harmed by TWC's unfair conduct. Such conduct includes:

a.  Failing to disclose during the consent process that TWC would collect users' minute-to-minute geolocation data and transmit it to third parties.

b.  Failing to take any other steps to reasonably notify users that TWC collects and continues to collect users' minute-to-minute geolocation data and transmit it to third parties.

c.  Failing to disclose that the true purpose for which TWC collected users geolocation data is not simply to provide weather data, as TWC affirmatively represented, but is to transmit this information to affiliates

and third parties for marketing purposes.

    d.    Failing to disclose the complete and shocking scope of TWC's geolocation data collection and high level of distribution of the data obtained.

    e.    Failing to disclose that TWC would not only identify users' locations, but maintain historical data as to users' movements.

    f.    Deceiving users into believing that TWC collected and continues to collect users' geolocation data in order to provides users with "personalized local weather data, alerts and forecasts."

    g.    Failing to disclose to users that TWC collected and continues to collect users' geolocation data for advertising and marketing purposes unrelated to weather.

    h.    Failing to disclose that users' geolocation data would be maintained indefinitely.

73. These unfair omissions and misrepresentations were in contrast the specific representations identified above given to Apple users; namely, that enabling the geolocation tracking function on the App was for the purpose of providing users with "personalized local weather data, alerts and forecasts." This representation was made to every Plaintiff and class member who used the App on an Apple device from the inception of the geolocation tracking function on the App until January 25, 2019.

74. The public policy that is the predicate to this unfair competition action is tethered to Article I, Section 1 of the California Constitution.

75. The gravity of the harm caused by TWC's conduct, the constant collection, indefinite maintenance, and sharing of Plaintiff's and class members' geolocation data without their consent far outweighs the utility of TWC's conduct in providing weather forecasts.

76. The injury to Plaintiff and the class members is substantial. They were subject to

constant monitoring of their location, remain subject to having their geolocation data maintained by TWC, and remain subject to having that geolocation data shared with affiliates of TWC and third parties. This is not outweighed by TWC's conduct in providing weather forecasts. Plaintiff and class members could not themselves have reasonably avoided this harm due to TWCs misrepresentations and because only TWC knew the full and shocking scope of their geolocation data program.

77.     TWC's failure to disclose material facts about the geolocation function of the App and the extent of their geolocation program was likely to deceive an ordinary consumer given TWC's misrepresentations and lack of disclosure of material facts.

78.     TWC's failure to disclose material facts about the geolocation function of the App and the extent of their geolocation program deceived Plaintiff and the class members into activating the geolocation feature on the App. By surreptitiously collecting, maintaining and sharing the geolocation data of Plaintiff and the class members, TWC has taken property from the Plaintiff and class members without providing just compensation.

79.     Plaintiff and class members would not have downloaded the App or allowed for their locations to be tracked had they known the truth about the App's geolocation tracking and had not been subject to TWC's misrepresentations and omissions.

80.     TWC has also engaged in unlawful conduct because its conduct also violated Article I, Section 1 of the California Constitution and the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq*.) as described above.

81.     As a result of the fraudulent, unfair, and unlawful practices described above, Plaintiff and each putative class member have been damaged in that their personal, private, and valuable geolocation data has been sold to their parties without their permission. Because of the unfair conduct the Plaintiff and class members surrendered more that than they otherwise would have. Additionally, a present and future property interest, in the form of their valuable geolocation information was diminished and continues to be diminished.

82.    Plaintiff, individually and on behalf of the class members, seek: (1) an injunction preventing TWC from maintaining or sharing the geolocation data of Plaintiff and class members obtained based upon the fraudulent, unfair, and unlawful misrepresentations and omissions; and (2) restitution of Plaintiff's and class members' money as property lost as a result of TWC's acts of unfair competition.

## FOURTH CAUSE OF ACTION

### DECLARATORY JUDGMENT

### (28 U.S.C. § 2201, *et seq.*)

83.    All allegations and paragraphs in this Complaint are incorporated by reference.

84.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

85.    An actual controversy has arisen due to TWC's maintenance of Plaintiff's and class members' geolocation data and sharing of that data with affiliates and third parties.

86.    Plaintiff and class members continue to suffer injury and damages as TWC continues to maintain Plaintiff's and class members' geolocation data and share it with affiliates and third parties without consent.

87.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    TWC continues to owe a legal duty not to maintain the geolocation data of Plaintiff and class members because it did not obtain consent to do so.

    b.    TWC continues to owe a legal duty not to share the geolocation data of Plaintiff and the class members with affiliates and third parties because it did not obtain consent to do so.

c.     TWC continues to breach these legal duties by continuing to maintain, and share the geolocation data of Plaintiff and the class members.

d.     TWC's ongoing breaches of its legal duties continue to cause Plaintiff and class members harm.

88.     The Court should also order corresponding injunctive relief requiring TWC to cease maintaining, and sharing Plaintiff's and class members' geolocation data for which it did not receive consent. This injunction should direct TWC to alter the geolocation data collection practices in regard to Plaintiff and class members.

89.     If an injunction is not issued, Plaintiff and class members will suffer irreparable injury and lack an adequate legal remedy in the event of TWC's ongoing conduct in that their valuable geolocation data will continue to be maintained, and shared with affiliates and third parties without their consent.

90.     The California Constitution and California law prohibits the constant tracking of persons without their consent. Given that TWC continues to maintain, and share the geolocation data of Plaintiff and class members without their consent renders the risk of continued violations of California law real, immediate, and substantial in that TWC will continue to maintain and share this data with third parties. Plaintiff and class members do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

91.     The hardship to Plaintiff and class members if an injunction is not issued exceeds the hardship to TWC if an injunction is issued. On the other hand, the cost to TWC of complying with an injunction by complying with California law and by ceasing to collect, maintain, and share the geolocation data of Plaintiff and the class members is relatively minimal, and TWC has a pre-existing legal duty to avoid invading the legally-protected privacy rights of consumers.

92.     Issuance of the requested injunctive relief will serve the public interest by preventing ongoing collection, maintenance, and sharing of Plaintiff's and class members'

geolocation data without their consent. This would eliminate the injuries that would result to Plaintiff and class members.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

93.     All allegations and paragraphs in this Complaint are incorporated by reference.

94.     To the extent necessary, this count is pled in the alternative.

95.     By surreptitiously collecting, transferring, and maintaining the geolocation data of Plaintiff and the Class Members without their permission, TWC has received a benefit from Plaintiff and Class Members.

96.     The benefit bestowed upon TWC was non-gratuitous and TWC realized value from this benefit in the form of millions in revenue by selling the geolocation data of Plaintiff and the Class Members to advertisers.

97.     While TWC received a benefit, Plaintiff and Class Members suffered an impoverishment in the ways described above. (*See, supra* ¶¶ 37-44).

98.     The enrichment TWC enjoyed, the sale of the geolocation data, is related to the impoverishment Plaintiff and Class Members suffered in that the data was taken from Plaintiff and Class Members and directly resulted in TWC's profit.

99.     There is no adequate remedy at law for this conduct.

100.     It would be unjust and inequitable for TWC to retain the benefit it received by deceiving Plaintiff and Class Members into giving up their valuable geolocation data.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

a.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing their counsel as class counsel;

b.     Declaring that TWC's actions, as set out above, violate Article I, Section 1 of the California Constitution;

c.     Declaring that TWC's actions, as set out above, violate California's Civil Code cited herein;

d.     Declaring that TWC's actions, as set out above, violate California's Business & Professions Code cited herein;

e.     Declaring that TWC's actions, as set out above, have unjustly enriched TWC;

f.     Requiring TWC to cease collecting the geolocation data of Plaintiff and the class members;

g.     Requiring TWC to cease maintaining the geolocation data of Plaintiff and the class members;

h.     Requiring TWC to cease sharing the geolocation data of Plaintiff and the class members with affiliates and third parties;

i.     Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the class members in the amount to be determined at trial;

j.     Awarding Plaintiff and the class members their costs of suit, including reasonable attorneys' and experts' fees and expenses;

k.     Awarding Plaintiff and the class members pre- and post-judgment interest, to the extent allowable;

l.     Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the class members; and

m.     Awarding such other relief as the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Dated: June 11, 2020

/s/ Nicholas W. Armstrong
Nicholas W. Armstrong
Cal. Bar No. 270963
Oscar M. Price, IV
PRICE ARMSTRONG LLC
2226 1st Ave S Suite 105
Birmingham, AL 35233
Phone: 205.706.7517
Fax: 205.209.9588
nick@pricearmstrong.com

*Attorneys for Plaintiff*