Nicholas W. Armstrong (Cal. Bar No. 270963)
Oscar M. Price, IV (*pro hac vice*)
Garrett Owens (*pro hac vice*)
PRICE ARMSTRONG LLC
1919 Cahaba Road
Birmingham, AL 35223
Phone: 205.706.7517
nick@pricearmstrong.com
oscar@pricearmstrong.com
garrett@pricearmstrong.com

John K. Landay (Cal Bar No. 257573)
LANDAY ROBERTS LLP
600 W. Broadway, Suite 700
San Diego, CA 92101
Phone: 619.230.5712
jlanday@landayroberts.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON HART, ALEX DANIELS, and JOSHUA DUNLAP<br><br>Plaintiffs,<br><br>v.<br><br>TWC PRODUCT AND TECHNOLOGY LLC,<br><br>Defendant. | Case No. 4:20-cv-3842-JST<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>1. Violation of Article I, Section 1 of the California Constitution (Cal. Const. art I, § 1)<br>2. Unjust Enrichment<br>3. Declaratory Judgment (28 U.S.C. § 2201, *et seq.*) |

# FIRST AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Jon Hart, Alex Daniels, and Joshua Dunlap, individually and on behalf of a class of all persons and entities in California who are similarly situated, and file this class action complaint against the Defendant TWC Product and Technology LLC ("TWC" or "Defendant").

## NATURE OF THE CASE

1. The location targeting industry in America is a $21 billion business. Personal and private information about where consumers live, enjoy recreational activities, shop, and dine, and the specific hours at which they do each of those activities is of almost immeasurable value to marketers and advertisers. Under the guise of providing precise and real-time weather information through a mobile weather application, or "App", Defendant in this case has for years been involved in a multi-million dollar scheme to collect, maintain and then profit of consumers geolocation data, all without their knowledge.

2. TWC Product and Technology, LLC is the internet, mobile, and cloud based arm of the popular "The Weather Channel" television station. TWC is owned and operated by IBM. A significant part of TWC's business is its Weather Channel App, which is used by tens of millions of American consumers every month. Defendants boast that the Weather Channel App is most downloaded weather app in the world.

3. For years now, TWC has been collecting and maintaining Weather Channel App users' private and personal geolocation data.

4. Until recently, TWC never did anything at all to disclose to App users the specificity with which it tracked users' geolocation, that it maintained this data, or that it directly profited from App user's geolocation data by transmitting or selling that data to affiliates and third parties for advertising and marketing purposes. Instead, TWC told users that their data would only be used for the user's benefit to provide them with personalized local weather information. Nothing in the description of the App or prompts to allow geolocation tracking alerted users to the extent

and purpose of the location tracking function of the App. As a result of lawsuits and in an attempt to correct its past misrepresentations and deceptions, TWC has drastically changed the disclosures it makes to App users regarding the purpose for which it collects geolocation data.

5. Before recent changes, TWC fraudulently and deceptively induced Weather Channel App users to grant Defendant access to their personal geolocation data under the guise of providing better weather information, TWC then tracked users' locations at all times, day and night, 365 days a year. TWC did not disclose to users that it maintains this data, much less that it directly profits from user's geolocation data by transmitting or selling that data to third parties for advertising and marketing purposes. By TWC's own admission, TWC's primary revenue source comes from collecting, maintaining and then profiting from user location data. In short, unbeknownst to Weather Channel App user's, TWC considers itself "a location data company powered by the weather."

6. This case seeks to hold TWC accountable for its years-long practice of tracking and selling the physical locations of the users of its mobile weather application, without those users' permission. Under the guise of providing precise and real-time weather information through a mobile weather application, or "app", TWC instead tracked and collected data on its users' locations–from their homes to their places of work, their schools, their daycares, and their churches–in a multimillion-dollar scheme to sell that data to third parties and business partners, all without its users' knowledge.

7. TWC's conduct in fraudulently collecting, maintaining, and then profiting off of users' valuable geolocation data constitutes a violation of Article I, Section 1 of the California Constitution, California Civil Code § 1750 *et seq*., and constitutes unjust enrichment. Finally, because of TWC's conduct, Plaintiffs and the class members are entitled to declaratory judgment.

**PARTIES**

8. Plaintiff Jon Hart is an adult resident of California. He downloaded the App prior to 2019 and has been damaged by TWC's unlawful, unfair, and fraudulent acquisition and use of

Page **3** of **17**
FIRST AMENDED CLASS ACTION COMPLAINT

his geolocation data.

9. Plaintiff Alex Daniels is an adult resident of California. He downloaded the App prior to 2019 and has been damaged by TWC's unlawful, unfair, and fraudulent acquisition and use of his geolocation data.

10. Plaintiff Joshua Dunlap is an adult resident of California. He downloaded the App prior to 2019 and has been damaged by TWC's unlawful, unfair, and fraudulent acquisition and use of his geolocation data.

11. Defendant TWC is a Delaware corporation with its headquarters in Atlanta, Georgia. TWC owns and operates the Weather Channel App, which is available for download and use on all major mobile platforms, including Apple and Android. TWC does business in the State of California and in this judicial district, having provided its Weather Channel App for download for California consumers like Plaintiffs. TWC is owned by IBM.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Defendant is a citizen of a state other than the state of which all the Plaintiffs are citizens, and Plaintiffs on behalf of themselves and the putative class seeks more than $5,000,000, exclusive of interest and costs. More than one hundred members are included in the putative class.

13. Venue in this case is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1441 in the United States Court for the Northern District of California, in that a substantial portion of TWC's conduct which forms the basis of this action occurred in this judicial district. TWC does business in this judicial district and has received and continues to receive substantial revenue and profits from the unlawful, unfair, and fraudulent acquisition and use of location data in this judicial district. TWC's conduct directly damaged individuals and entities which reside in this judicial district, including Plaintiff Jon Hart, and TWC did, or reasonably should have, anticipated that this conduct would subject them to the jurisdiction of this Court. TWC was subject to personal

jurisdiction in this judicial district at the time this action was commenced and are deemed to reside in this judicial district.

## CLASS ACTION ALLEGATIONS

14. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs assert a class of individuals and entities throughout California who were harmed by TWC's deceptive conduct. That class is defined as:

> All persons and entities who reside in California who (1) downloaded the Weather Channel App and (2) granted TWC access to the user's geolocation data before January 25, 2019.

15. Excluded from the class are any person or entity currently in bankruptcy, any person or entity whose obligations have been discharged in bankruptcy, any employee or affiliate of TWC, and any judicial officer who has presided over this case.

16. Plaintiffs maintain the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class which does not require individual inquiry to determine liability.

17. All information necessary to identify the class members and the damages class members incurred is in TWC's possession or control.

## NUMEROSITY

18. The exact number of class members is unknown to Plaintiffs at this time, but is in excess of one thousand and can be ascertained through appropriate discovery.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

19. There are common questions of law and fact of general interest to the class. These common questions of law and fact predominate over any questions affecting only individual members of the classes. Among these common questions are the following:

   a. Whether TWC disclosed to Weather Channel App users that it would collect, maintain, and sell their geolocation data.

b. Whether TWC's process for inducing Weather Channel App users to grant TWC permission to access their geolocation data was deceptive and unfair;

c. Whether TWC'S representations to Weather Channel App users that the purpose for accessing users' geolocation data was to provide users with personalized and local weather information is deceptive and unfair;

d. Whether TWC'S representations to Weather Channel App users that the purpose for accessing users' geolocation data was to provide users with personalized and local weather information is fraudulent;

e. Whether TWC disclosed to Weather Channel App users that TWC is "a location data company powered by the weather;"

f. Whether TWC disclosed to Weather Channel App users that it sells or otherwise profits from disseminating users' geolocation data to affiliates and third parties;

g. Whether TWC violated Article I, Section 1 of the California Constitution.

h. Whether TWC was unjustly enriched through its conduct.

i. Whether declaratory judgment is proper.

## TYPICALITY

20. The claims of the named Plaintiffs are typical of the claims of the class. They were subject to, and harmed by, the same uniform conduct that each and every member of the class was subject to and harmed by.

## ADEQUATE REPRESENTATION

21. Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiffs have retained class counsel competent to prosecute class actions, and such class counsel are financially able to represent the classes.

## SUPERIORITY

22. The class action device is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the classes is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiff classes rather than for the Plaintiffs and other class members on an individual basis.

23. Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

24. The Weather Channel App is a mobile application ostensibly designed to give users weather forecasts, alerts, and other real-time weather information. It is available for download on Android and Apple devices. It is a "free" download, although as with many apps, an "ad-free" version is offered for a small fee.

25. As a result of lawsuits and in an attempt to correct its past misrepresentations and deceptions, TWC has drastically changed the disclosures it makes to App users regarding the purpose for which it collects geolocation data.

26. However, these corrections did nothing to cure the deceptive, fraudulent, and unfair conduct on the part of TWC that induced Plaintiffs and class members to allow TWC access to their location and to maintain it and share it with third parties in the first place. In fact, TWC is still utilizing the ill-gotten data for these individuals and profiting from it.

27. Before these changes were made, TWC never did anything at all to disclose to App users the extent to which it tracked users' location, that it maintained this data, much less that it directly profited from App user's geolocation data by transmitting or selling that data to third parties for advertising and marketing purposes. Instead, TWC told users that their data would only be used for the user's benefit to provide them with personalized local weather information. Nothing in the description of the App or prompts to allow geolocation tracking alerted users to the extent and purpose of the location tracking function of the App.

Page **7** of **17**
FIRST AMENDED CLASS ACTION COMPLAINT

28. As demonstrated herein, the Weather Channel App's actual purpose was, and remains, to collect, maintain, and then provides or sells users' geolocation data to affiliates and other third parties, all without notifying users that it was doing so.

29. Plaintiffs and class members, who allowed TWC to collect, maintain, and share their geolocation data before changes to disclosures, were harmed by TWC's conduct. Their data was collected, maintained and shared without their consent. To this day TWC continues to maintain this ill-gotten data and continues to share it with third parties.

**Defendant Did Not Disclose To Users That It Collects Their Geolocation Data And Did Not Obtain Their Consent To Give That Data To Third Parties**

30. Immediately upon opening the Weather Channel App for the first time, the app asked the user for permission to access the user's "location." Regardless of the device being used, this request did not inform the user that TWC would be tracking the users every move or that this information will be used for any purpose other than providing the user information about the weather. Specifically, the request to access the user's location on Apple devices simply stated that granting access will result in "personalized local weather data, alerts, and forecasts." The request on Android devices simply said "Allow The Weather Channel to access this device's location?" with the option to "Deny" or "Allow."

31. The consent process employed by the Weather Channel App made absolutely no reference to any additional information the user should read or review prior to providing consent to geolocation tracking. Nowhere in the consent process was the user confronted with the information that their minute-by-minute geolocation data will be broadly disseminated by TWC and that TWC would make millions disseminating users' geolocation data. Importantly, the consent process did not direct users to any "Privacy Policy" or "Privacy Settings", so users had no reason to search those voluminous documents for any vague discussions of geolocation data that might be buried within those documents.

32. The consent process did not involve disclosures that the user would be subjected to targeted advertisements based on their captured geolocation data that would be transferred to affiliates and third parties.

33. The consent process did not involve disclosing that, in addition to simply capturing users' geolocation data and transferring it, TWC would maintain that data for an indefinite period.

34. Defendants' failure to notify users that it is in the business of collecting and selling their personal geolocation data is intentional. TWC executives have admitted that if consumers knew of the Weather Channel App's true purpose, consumers would be alarmed.

### The Data That TWC Collected And Still Collects

35. Importantly, TWC did not and does not merely collect users' city or zip code. Instead, TWC tracks, collects, and *maintains* users' precise location and movements on a minute-by-minute and sometimes second-by-second basis, regardless of whether the user currently has the Weather Channel App open. Nowhere in the consent process did TWC disclose that it would be doing anything other than identifying where a user is generally located for the purpose of providing more accurate weather information.

36. The volume of data TWC collected and continues to collect is immense. TWC has boasted that it is able to track users locations and movements with "unmatched accuracy and precision" and even speculated that it may possess the world's largest trove of consumer geolocation data. (*See* David Kaplan, The Weather Company Rolls Out Location Marketing Platform to Anticipate Consumers' Movements, GeoMarketing (Oct. 13, 2016)).

### TWC's Transmission Of Users' Geolocation Data to Third Parties

37. By failing to disclose the true purpose been their location tracking, TWC was able to induce the vast majority of Weather Channel App uses to give Defendants access to their geolocation data, day and night, 24 hours a day, 365 days a year.

38. TWC then sold or otherwise transmitted virtually all of users' personal geolocation data to affiliates or third parties, including private equity firms and hedge funds, without their

permission and continues to do so. Some of those third parties are indirectly affiliated with TWC, while others are not, but in both circumstances, TWC financially benefited and continues to benefit, either directly or indirectly, from the sale or other dissemination of this valuable information. TWC has even gone as far as to sell this information to hedge funds, who used the data to monitor certain areas of consumer spending. TWC, along with its parent IBM, has even developed it own location driven marketing platform, "JOURNEYfx," through which TWC, IBM, and others further exploit the inherent value of this data.

**Defendant's Conduct Has Resulted In Damages**

39. As alleged above, Plaintiffs' and the class members' geolocation data is extremely valuable to TWC. That data also has value to Plaintiffs and members of the putative class and by capturing it, transferring it to third parties, and maintaining it without the consent of Plaintiffs and the members of the class, Defendant has decreased that value in several ways.

*Damage To Plaintiffs' and Class Members' Legally-Protected Privacy Interests*

40. Plaintiffs and the class members, like any other persons, have an interest in the privacy of their affairs. Their given location at every minute of the day is something that generally is free from disclosure to non-present third parties. Plaintiffs' privacy interests include a reasonable expectation that they will be free from targeted and manipulative marketing based upon their current and constantly-updated location information without receiving sufficient disclosures and consenting to such marketing. This interest in enshrined in Article I, Section 1 of the California Constitution and cases interpreting it creating a freedom to conduct personal activities without constant observation.

41. By collecting and transferring the geolocation data of Plaintiffs and the class members to third parties, TWC has intruded on these interests in a way that cannot be undone; the bell to advertisers as to the user's exact, constantly-updated location has been forever rung. This permanent invasion on the privacy interests of Plaintiffs and the class members, without their consent, is a cognizable, compensable injury.

*Damage to Plaintiffs' and Class Members' Legally-Protected Property Interests*

42. The geolocation data of Plaintiffs and class members obviously has very high, tangible value in TWC's dealings with advertisers and third parties. Namely, the advertisers pay for that data; giving it value. TWC garners an enormous amount of revenue from the data of Plaintiffs and the putative class members because of the insight it provides into their location and, to the properly equipped parties, potential as customers.

43. TWC, without disclosing such to Plaintiffs and the class members, took control over and appropriated this valuable information by capturing it and transmitting it to advertisers and other third parties.

44. TWC's appropriation of this data works to damage the property interests of Plaintiffs and the putative class members. When TWC misled class members into unwittingly surrendering their private data for resale to third parties, it changed the terms of the bargain between TWC and its users, and TWC knew that it had induced its users to surrender something of value–their private data, now a source of profit for TWC–for nothing. By taking more from them than it had disclosed –by taking something for nothing–TWC inflicted immediate and direct damages on its users.

45. Here, Plaintiffs and class members suffered direct property damage through TWC's conduct in deceptively taking and disseminating their private, valuable geolocation data.

46. Plaintiffs further suffered damage through the inherent value of their privacy, and through the reduced performance of their devices due to the undisclosed tracking activity.

47. By surreptitiously capturing, transferring and maintaining the geolocation data, TWC has taken something of value from Plaintiffs and the class members without their consent.

# FIRST CAUSE OF ACTION

# VIOLATION OF ARTICLE I SECTION 1 OF THE CALIFORNIA CONSTITUTION

# (Cal. Const. art. I, § 1)

48. Article I, Section 1 of the California Constitution creates a privacy right protecting individuals from invasions of their privacy from state and private parties.

49. Plaintiffs and class members had a legally protected privacy interest in their exact location 24 hours per day, 365 days per year as well as their historical location. They, as individuals have a legally protected interest in conducting personal activities without observation within the confines of social norms. It is not generally accepted that, after receiving disclosures that your geolocation information would be used to provide "personalized local weather data, alerts and forecasts," a person would expect to be tracked constantly, wherever they go. It is also not generally accepted that, given that disclosure, a person would be subject to having their geolocation information maintained for an indefinite period. Further, it is not generally accepted that, given that disclosure, a person's geolocation information would be shared or otherwise transmitted to third parties or TWC affiliates.

50. Plaintiffs and class members had a reasonable expectation of privacy under the circumstances. Given the disclosure that the geolocation tracking was to provide "personalized local weather data, alerts and forecasts" on Apple devices and the total lack of description of any other material facts on Android devices, it was reasonable and within broadly accepted community norms to believe that such information would only be gathered in a general manner to provide weather forecasts for the area. Instead, the location information collected was disturbingly precise. Additionally, given the disclosure, it was reasonable and within broadly accepted community norms to believe that geolocation information would not be stored and maintained indefinitely as such maintenance would not be needed to provide weather forecasts. Further, given the disclosure, it was reasonable and within broadly accepted community norms to believe that the location information would not be shared because that is not necessary for providing weather forecasts.

51. TWC's invasion of the privacy interests of Plaintiffs and the class members was serious. This was not routine commercial behavior akin to collecting a telephone number or address. Instead TWC constantly tracked users' precise movements, stored that information and transmitted it to third parties. This invasion was so comprehensive as to constitute an egregious breach of social norms surround a person's right to conduct personal activities without observation.

52. As a result of TWC's invasion of Plaintiffs' and class members' privacy, they were damaged in that their legally cognizable right to privacy was encroached upon.

## SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT

53. All allegations and paragraphs in this Complaint are incorporated by reference.

54. To the extent necessary, this count is pled in the alternative.

55. By surreptitiously collecting, transferring, and maintaining the geolocation data of Plaintiffs and the Class Members without their permission, TWC has received a benefit from Plaintiffs and Class Members.

56. The benefit bestowed upon TWC was non-gratuitous and TWC realized value from this benefit in the form of millions in revenue by selling the geolocation data of Plaintiffs and the Class Members to advertisers.

57. While TWC received a benefit, Plaintiffs and Class Members suffered an impoverishment in the ways described above. (*See, supra* ¶¶ 37-44).

58. The enrichment TWC enjoyed, the sale of the geolocation data, is related to the impoverishment Plaintiffs and Class Members suffered in that the data was taken from Plaintiffs and Class Members and directly resulted in TWC's profit.

59. There is no adequate remedy at law for this conduct.

60. It would be unjust and inequitable for TWC to retain the benefit it received by deceiving Plaintiffs and Class Members into giving up their valuable geolocation data.

# THIRD CAUSE OF ACTION

# DECLARATORY JUDGMENT

# (28 U.S.C. § 2201, *et seq*.)

61. All allegations and paragraphs in this Complaint are incorporated by reference.

62. Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

63. An actual controversy has arisen due to TWC's maintenance of Plaintiffs' and class members' geolocation data and sharing of that data with affiliates and third parties.

64. Plaintiffs and class members continue to suffer injury and damages as TWC continues to maintain Plaintiffs' and class members' geolocation data and share it with affiliates and third parties without consent.

65. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. TWC continues to owe a legal duty not to maintain the geolocation data of Plaintiffs and class members because it did not obtain consent to do so.

    b. TWC continues to owe a legal duty not to share the geolocation data of Plaintiffs and the class members with affiliates and third parties because it did not obtain consent to do so.

    c. TWC continues to breach these legal duties by continuing to maintain, and share the geolocation data of Plaintiffs and the class members.

    d. TWC's ongoing breaches of its legal duties continue to cause Plaintiffs and class members harm.

66. The Court should also order corresponding injunctive relief requiring TWC to cease maintaining, and sharing Plaintiffs' and class members' geolocation data for which it did not receive consent. This injunction should direct TWC to alter the geolocation data collection practices in regard to Plaintiffs and class members.

67. If an injunction is not issued, Plaintiffs and class members will suffer irreparable injury and lack an adequate legal remedy in the event of TWC's ongoing conduct in that their valuable geolocation data will continue to be maintained, and shared with affiliates and third parties without their consent.

68. The California Constitution and California law prohibits the constant tracking of persons without their consent. Given that TWC continues to maintain, and share the geolocation data of Plaintiffs and class members without their consent renders the risk of continued violations of California law real, immediate, and substantial in that TWC will continue to maintain and share this data with third parties. Plaintiffs and class members do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

69. The hardship to Plaintiffs and class members if an injunction is not issued exceeds the hardship to TWC if an injunction is issued. On the other hand, the cost to TWC of complying with an injunction by complying with California law and by ceasing to collect, maintain, and share the geolocation data of Plaintiffs and the class members is relatively minimal, and TWC has a pre-existing legal duty to avoid invading the legally-protected privacy rights of consumers.

70. Issuance of the requested injunctive relief will serve the public interest by preventing ongoing collection, maintenance, and sharing of Plaintiffs' and class members' geolocation data without their consent. This would eliminate the injuries that would result to Plaintiffs and class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

    a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as the representative of the Class, and appointing their counsel as class counsel;

    b. Declaring that TWC's actions, as set out above, violate Article I, Section 1 of the California Constitution;

    c. Declaring that TWC's actions, as set out above, have unjustly enriched TWC;

    d. Requiring TWC to cease collecting the geolocation data of Plaintiffs and the class members;

    e. Requiring TWC to cease maintaining the geolocation data of Plaintiffs and the class members;

    f. Requiring TWC to cease sharing the geolocation data of Plaintiffs and the class members with affiliates and third parties;

    g. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the class members in the amount to be determined at trial;

    h. Awarding Plaintiffs and the class members the gains realized by TWC from its improper conduct;

    i. Awarding Plaintiffs and the class members their costs of suit, as well as reasonable attorneys' fees;

    j. Awarding Plaintiffs and the class members pre- and post-judgment interest, to the extent allowable;

    k. Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the class members; and

l. Awarding such other relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: June 22, 2021

*/s/ Nicholas W. Armstrong*
Nicholas W. Armstrong
Cal. Bar No. 270963
Oscar M. Price, IV (*pro hac vice*)
Garrett Owens (*pro hac vice*
PRICE ARMSTRONG LLC
2226 1st Ave S Suite 105
Birmingham, AL 35233
Phone: 205.706.7517
Fax: 205.209.9588
nick@pricearmstrong.com
oscar@pricearmstrong.com
garrett@pricearmstrong.com

John K. Landay (Cal Bar No. 257573)
LANDAY ROBERTS LLP
600 W. Broadway, Suite 700
San Diego, CA 92101
Phone: 619.230.5712
jlanday@landayroberts.com

*Attorneys for Plaintiffs*