Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Lindsay Cooper (Bar No. 287125)
lindsaycooper@quinnemanuel.com
50 California Street, Floor 22
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Anil Makhijani (admitted *pro hac vice*)
anilmakhijani@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant TWC
Product and Technology LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON HART, ALEX DANIELS, and JOSHUA DUNLAP,<br><br>Plaintiffs,<br><br>vs.<br><br>TWC PRODUCT AND TECHNOLOGY LLC,<br><br>Defendant. | Case No. 4:20-cv-03842-JST  (JSC)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF STANDING PURSUANT TO RULE 12(B)(1)**<br><br>[*Declarations of Daryl Partin and Lindsay Cooper filed concurrently*]<br><br>Date: December 2, 2021<br>Time: 2:00 p.m.<br><br>The Hon. Jon S. Tigar<br><br>Trial Date: None Set |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2021 at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Jon S. Tigar, in Courtroom 6 located at 1301 Clay Street, Oakland, California 94612, Defendant TWC Product and Technology LLC ("TWC") will, and hereby does, move this Court for an order granting its Motion to Dismiss Plaintiffs' Amended Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). The motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Daryl Partin and Lindsay Cooper, the Court's files in this action, the oral argument of counsel at the hearing, and on such materials and evidence as may be presented to the Court.

## RELIEF REQUESTED

Defendant requests that the Court dismiss Plaintiffs' Amended Complaint with prejudice, in its entirety, because Plaintiffs lack standing and thus the Court lacks jurisdiction.

DATED: October 15, 2021       QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____/s/ Stephen A. Broome_____
Attorney for Defendant TWC Product and Technology LLC

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2

II.  FACTUAL BACKGROUND ........................................................................................ 2

     A.   TWC Seeks Discovery Regarding Plaintiffs' Allegations ...................................... 3

         1.   TWC Has No Record Of Plaintiffs' Advertising IDs In Its Systems ............ 4

         2.   TWC Has No Record of Location Data Associated With Plaintiffs' TWC IDs From The Alleged Class Period ...................................... 4

     B.   The Only Plaintiff From Whom TWC Has Location Data Shared Location From A Version Of The App That Specifically Informed Users That TWC Collects Location Data For Advertising. ................................................................. 5

     C.   Plaintiffs Insist That They Shared Location Data With TWC, But Only While Using The TWC App ................................................................................ 6

     D.   Plaintiffs Cannot Present Evidence That They Were Harmed By TWC's Alleged Conduct ............................................................................................... 6

III. LEGAL STANDARD .................................................................................................. 7

IV.  ARGUMENT ............................................................................................................... 8

     A.   Plaintiffs Lack Standing To Challenge TWC's Alleged Conduct Because There Is No Evidence That TWC Collected Their Location Data During The Class Period ............................................................................................... 8

     B.   Plaintiffs Lack Standing To Challenge TWC's Alleged Conduct Because They Acknowledge That, To The Extent They Shared Location Data, They Did So On The "Only While Using The App" Setting ......................................... 10

V.   CONCLUSION ........................................................................................................... 13

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984) ...................................................................................................8

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ...................................................................................10

*Burns v. Mammoth Media, Inc.*,
    No. CV 20-04855, 2021 WL 3500964 (C.D. Cal. Aug. 6, 2021) ........................9, 10

*Cetacean Cmty. v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) ...................................................................................8

*City of Los Angeles v. Cty. of Kern*,
    581 F.3d 841 (9th Cir. 2009) .....................................................................................7

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ...................................................................................................7

*Foster v. Essex Property, Inc.*,
    No. 5:14-cv-05531-EJD, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ................9, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) ...................................................................................................7

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ...................................................................13

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) ...................................................................................12

*In re Google Location History Litigation*,
    428 F.Supp.3d 185 (N.D. Cal., 2019)................................................................12, 13

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ...................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................................8

*Moreno v. San Francisco Bay Area Rapid Transit District*,
    No.17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 4, 2017) ........................13

*Rivera v. Invitation Homes, Inc.*,
    No. 18-cv-03158-JSW, 2019 WL 11863726 (N.D. Cal. June 19, 2019)...................12

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...................................................................................8

*Spokeo v. Robins*,
    136 S. Ct. 1540 (2016) ...........................................................................................7, 8

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ...................................................................................... passim

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ...................................................................................................8

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................................8

*Winters v. Ridgewood Indus., LTD.*,
    No. 2:20-cv-00092 WBS KJN, 2020 WL 3035217 (E.D. Cal. Jun. 5, 2020) ........................... 10

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ........................................................................................ 7, 8, 10

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 2, 7, 8, 9, 10, 13

Fed. R. Civ. P. 12(h)(3) ...........................................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

TWC moves to dismiss Plaintiffs' First Amended Complaint ("FAC") (Dkt. 73) for lack of standing. Plaintiffs' theory of the case is that they have suffered harm because TWC was surreptitiously "collecting," "maintaining," and "sharing" their location data through the TWC App before January 25, 2019, and using their location data not merely to provide weather information but also to personalize the ads displayed within the TWC App. But discovery has confirmed that this theory is false. As explained in the accompanying Declaration of Daryl Partin ("Partin Decl."), TWC's Global Head of Data Management, TWC's search of its systems has confirmed that TWC does not possess any pre-January 2019 location data associated with any of the devices onto which the three Plaintiffs contend they downloaded the TWC App (the only devices they have preserved for purposes of this litigation). Further, TWC only has location data for one of the three Plaintiffs (beginning March 17, 2019), and that data was collected from a version of the TWC App for which the location-access permission prompt specifically informed users that TWC collects and shares users' location data to provide, among other information, "geographically relevant advertising." Accordingly, because there is no objective evidence that TWC collected location data from Plaintiffs' devices during the alleged class period, or that Plaintiffs otherwise suffered any of the harms alleged, Plaintiffs lack standing under Article III of the U.S. Constitution, and the Court lacks subject matter jurisdiction.

The Supreme Court recently confirmed that class action plaintiffs must each have suffered a concrete and particularized harm, meaning a harm that is "real" and "not abstract." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021). Plaintiffs cannot meet their burden to establish that they have suffered concrete and particularized harms in this case. Given that TWC does not possess location data associated with Plaintiffs' devices that was collected during alleged class period, the burden shifts to Plaintiffs to present objective evidence establishing subject matter jurisdiction. Plaintiffs cannot present any such evidence. Simply put, there is no evidence that TWC collected Plaintiffs' location data during the alleged class period, and thus they lack standing.

Plaintiffs also lack standing because their interrogatory responses and other evidence independently confirm Plaintiffs did not suffer the harms alleged. Even assuming *arguendo* that

Plaintiffs had shared location data with TWC during the alleged class period (and there is no evidence that they did), their interrogatory responses assert that they did so only on the "Only While Using the App" Setting.[1]  This means that TWC would have collected location data from Plaintiffs' devices while Plaintiffs were actively using the App—not in the background "on a minute-by-minute and sometimes second-by-second basis" as Plaintiffs allege in the FAC.  Because Plaintiffs admit they were not subject to continuous location tracking, they have not suffered the kind of privacy harm on which their claims are based, and thus they lack standing to pursue their claims.

Because Plaintiffs lack standing, TWC respectfully requests that the Court dismiss Plaintiffs' claims with prejudice under Rule 12(b)(1).

## I.   STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs have standing to pursue their claims such that the Court has subject matter jurisdiction over this case under Fed. R. Civ. P. 12(b)(1).

## II.   FACTUAL BACKGROUND

This is a putative data privacy class action.  Plaintiffs' core allegation is that TWC deceived users by failing to adequately disclose in its permission prompts that location data would be collected, used and shared for advertising purposes.  FAC ¶¶ 4–6, 24–38.  Plaintiffs have defined the proposed class as California residents who "granted TWC access to the user's geolocation data *before January 25, 2019*."  FAC ¶ 14 (emphasis added).  Plaintiffs admit that TWC "changed the disclosures" on which their claims are based on January 25, 2019, and they do not allege that TWC's disclosures since this date are unlawful or in any way incomplete or misleading.[2]  *Id.* ¶¶ 4, 25.

---

[1]  Plaintiffs all used iOS (Apple) devices.  During the relevant period, the iOS location-sharing permission prompt gave app users the options to share their device's GPS location: "Only While Using the App," "Always Allow," or "Don't Allow."  Partin Decl. ¶ 13.  If a user (like Plaintiffs) selected "Only While Using the App," their device's operating system would allow the App access to location data while the App was open and being actively used.  Partin Decl. ¶ 15.  The device's operating system would not allow the App to access location continuously in the background.  *Id.*

[2]  On or around January 25, 2019, TWC revised the iOS location access permission prompt to state "We use and share your location data as described in our privacy policy, including to provide you with personalized local weather data, alerts, and geographically relevant advertising."  Partin Decl. ¶ 14.  Plaintiffs have thus limited their claims to location data collected through the TWC App before January 25, 2019.  FAC ¶ 14.

TWC moved to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) (Dkt. 18), and the Court granted TWC's motion in part (Dkt. 45). Plaintiffs have since amended their complaint and now have three claims remaining: (1) a California Constitutional privacy claim, (2) an unjust enrichment claim, and (3) a declaratory judgment claim. The allegation that TWC collected, maintained, and shared Plaintiffs' location data before January 2019 is at the heart of Plaintiffs' three remaining claims. FAC ¶¶ 50–51 (California Constitutional privacy claim: TWC "stored [user location] information and transmitted it to third parties"), ¶ 55 (Unjust enrichment: "By surreptitiously collecting, transferring, and maintaining the geolocation data of Plaintiffs and the Class Members without their permission, TWC has received a benefit from Plaintiffs and Class Members"), ¶ 64 (Declaratory judgment: "Plaintiffs and class members continue to suffer injury and damages as TWC continues to maintain Plaintiffs' and class members' geolocation data and share it with affiliates and third parties without consent"); *see also* ¶¶ 1, 3–7, 19, 25, 28–29, 34–36, 41.

### A.   TWC Seeks Discovery Regarding Plaintiffs' Allegations

TWC does not store location data with personally identifying information, such as name, email address, phone number, or other contact information that might identify an individual user. Partin Decl. ¶ 3. In fact, TWC does not even allow users to provide such personally identifying information. *Id*. Instead, TWC stores location data keyed to a proprietary pseudonymous alphanumeric identifier that is unique to a TWC App installed on a device ("TWC ID"). *Id*. For location data used for advertising, TWC maintains a record of the device's Advertising ID or Identifier for Advertising ("IDFA") (collectively, "Advertising ID"), a unique and user-resettable identifier assigned by the mobile device's operating system. *Id*.

To discern whether TWC has used location data from a specific device for advertising, TWC can look up the device's Advertising ID(s) in its systems. Partin Decl. ¶ 4. To conclusively establish whether TWC *possesses* location data from a specific device (regardless of whether the location data was used for advertising), TWC can recover the TWC ID from the TWC App installed on the device and scan its data for that identifier. *Id*. TWC spent approximately five months seeking these two identifiers from Plaintiffs.

### 1.   TWC Has No Record Of Plaintiffs' Advertising IDs In Its Systems

At the beginning of discovery, Jon Hart was the only named plaintiff in this case. TWC asked Plaintiff Hart to provide his Advertising ID on April 5, 2021, and repeated this request at least seven times before the parties' May 13 hearing with Magistrate Judge Corley. Ex. 1.[3] Hart agreed to provide his Advertising ID during the May 13 hearing, and ultimately provided it on May 20. Ex. 2. The next day, Plaintiff's counsel informed TWC that they planned to add additional putative class representatives the next day. Ex. 3. After Hart sought leave to amend his Complaint to add two additional class representatives on May 28, 2021, TWC requested the Advertising IDs for the two new class representatives as well. Ex. 4. Plaintiffs Dunlap and Daniels provided their Advertising IDs approximately two months later, on July 22. Exs. 5–6.

Immediately after receiving each of Plaintiffs' Advertising IDs, TWC searched for Plaintiffs' Advertising IDs in TWC's systems. Partin Decl. ¶¶ 5–7. The Advertising IDs provided by Plaintiffs do not exist in TWC's systems. *Id*. ¶ 8. This could be because TWC has not used location data associated with Plaintiffs' Advertising IDs for advertising, because Plaintiffs reset their Advertising IDs, or because Plaintiffs initiated a deletion request. *Id*. Whatever the reason, it is now clear that there is no objective evidence that any location data from Plaintiffs' devices was used by TWC for advertising.

### 2.   TWC Has No Record of Location Data Associated With Plaintiffs' TWC IDs From The Alleged Class Period

When it became clear that TWC had no record of the Plaintiffs' Advertising IDs in its systems, TWC immediately asked Plaintiffs to provide forensic images of the TWC App files on their devices so that TWC could recover Plaintiffs' TWC IDs to determine whether TWC had in fact *collected* location data associated with Plaintiffs' devices (even if such data was never used for advertising). Ex. 7. Since obtaining the TWC ID requires taking a forensic image of the TWC App installation, TWC offered to connect Plaintiffs' counsel with an independent expert qualified to conduct such an analysis. *Id*. Plaintiffs ignored that offer, and instead spent almost two months attempting to complete the forensic analysis themselves. Ex. 8.

---

[3] "Ex." refers to exhibits to the Declaration of Lindsay Cooper, submitted concurrently herewith.

1     Immediately after receiving Plaintiffs' TWC IDs, TWC sought to cross-reference the

2 identifiers with the geolocation data stored in its systems. Partin Decl. ¶¶ 5  12. TWC has confirmed

3 that it does not possess any location data associated with Plaintiffs' TWC IDs from before January

4 25, 2019.  For Plaintiff Hart, TWC was able to retrieve the relevant identifier from the forensic

5 image but could not locate that identifier in its systems, let alone find any location data associated

6 with it.  Partin Decl. ¶ 11.  This could be because Hart is using an old version of a TWC application

7 (deprecated in approximately 2016) which did not use the TWC ID, is no longer supported by TWC,

8 and from which TWC has not received location data since the version was deprecated in or around

9 2016. *Id*.  For Plaintiffs Daniels and Dunlap, TWC was able to retrieve the relevant identifiers from

10 the forensic images. *Id.* ¶¶ 9–10.  TWC does not have any location data at all for Plaintiff Daniels'

11 device, much less any location information from the alleged class period. *Id.* ¶ 10; FAC ¶ 14.  For

12 Plaintiff Dunlap, TWC only has location data from March 17, 2019 through October 30, 2020—

13 *after* the alleged class period.  Partin Decl. ¶ 9; FAC ¶ 14.

14     **B.**    **The Only Plaintiff From Whom TWC Has Location Data Shared Location**
**From A Version Of The App That Specifically Informed Users That TWC**
15         **Collects Location Data For Advertising.**

16     TWC only has location data for one of the three named plaintiffs.  Partin Decl. ¶ 9.  And for

17 that Plaintiff, the location data TWC has was collected from a version of the TWC App which

18 specifically informed users that TWC uses and shares location data for advertising. *Id.* ¶ 15.[4]  This

19 not only means that Dunlap was specifically informed that his location data would be used for

20 advertising; it also means that he continued using the TWC App and sharing location with TWC

21 after being so informed. *See id.* ¶ 16.  Of course, Dunlap also continued using the TWC App and

22 sharing location after TWC's practices became the subject of a high-profile litigation with the Los

23 Angeles City Attorney on January 3, 2019, and even after the complaint in this action was filed on

24 June 11, 2020, fully aware of TWC's practices alleged in the complaint. *See* Dkt. 1.

25

26

27     [4]  The location permission prompt for this version of the TWC App informed users that "We

28 use and share your location data as described in our privacy policy, including to provide you with
personalized local weather data, alerts, and geographically relevant advertising."  Partin Decl. ¶ 14.

-5-        Case No. 4:20-cv-03842-JST (JSC)

C.    **Plaintiffs Insist That They Shared Location Data With TWC, But Only While Using The TWC App**

As the Partin Declaration confirms, there is no evidence that Plaintiffs shared their location data with TWC during the alleged class period. There is only evidence, from Plaintiffs themselves, that they purportedly *agreed* to share their location data with TWC during the alleged class period. Exs. 9 at 3, 10 at 3, 11 at 3. But Plaintiffs cannot confirm whether any such data was actually collected by TWC. Moreover, in sworn interrogatory responses, all three Plaintiffs have asserted that they agreed to share their location only "while using the TWC App." Exs. 9 at 4, 10 at 3, 11 at 3. If a user has selected this location-sharing setting, the iOS operating system will allow the TWC App access to location data while a user is actively using the TWC App. Partin Decl. ¶ 16. Importantly, under this sharing setting, TWC does not collect location information continuously "on a minute-by-minute and sometimes second-by-second basis," as Plaintiffs allege in the Complaint. FAC ¶ 35. TWC also does not collect location continuously in the background "regardless of whether the user currently has the Weather Channel App open." *Id*. Even if a user opened the TWC App, used it, and failed to close it such that the App was still running in the background, the operating system would prevent the App from continuously accessing location data after the user stopped actively using the App. Partin Decl. ¶ 16.

D.    **Plaintiffs Cannot Present Evidence That They Were Harmed By TWC's Alleged Conduct**

Given the record described above, Plaintiffs cannot present evidence that they were harmed by TWC's alleged conduct. Although all three Plaintiffs claim to have agreed to share their location with the TWC App before January 25, 2019,[5] none have submitted (or can submit) any evidence that TWC actually collected their location data before that date. Further, two of the named plaintiffs have not preserved their devices from the relevant class period and thus cannot rely on those devices to substantiate their claims. The only devices that Plaintiffs Daniels and Dunlap have preserved are

---

[5] Plaintiff Daniels claims to have downloaded the TWC App to an iPhone on October 28, 2012. Ex. 10 at 2. Plaintiff Dunlap claims to have downloaded the TWC App to an iPhone on December 26, 2009. Ex. 11 at 3. Plaintiff Hart claims to have downloaded the TWC App to an iPad Air, but does not recall when he downloaded the TWC App to his iPad Air. Ex. 9 at 3.

1  an iPhone 12 Pro and an iPhone 11 Pro (Exs. 10 at 4, 11 at 4), both of which were released *after*

2  January 2019.  Ex. 12 (iPhone 12 Pro available for preorder October 16, 2020); Ex. 13 (iPhone 11

3  Pro available for preorder September 13, 2019).[6]  And while Plaintiff Hart claims to have preserved

4  the iPad Air that he used during the relevant class period, Hart does not recall *when* he downloaded

5  the TWC App or whether he ever changed his location sharing settings. Ex. 9 at 4.

6  **III.    LEGAL STANDARD**

7          The constitutional standing doctrine "functions to ensure, among other things, that the scarce

8  resources of the federal courts are devoted to those disputes in which the parties have a concrete

9  stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 191 (2000).  It "is a

10 doctrine rooted in the traditional understanding of a case or controversy" and "limits the category

11 of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."

12 *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Standing to sue is also a jurisdictional requirement

13 that cannot be waived.  *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

14          Plaintiffs have the burden of establishing subject matter jurisdiction under Fed. R. Civ. P.

15 12(b)(1).  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  A party can challenge a

16 court's subject matter jurisdiction "at any time," and if the court determines that it lacks subject

17 matter jurisdiction, it "must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A challenge to subject

18 matter jurisdiction pursuant to Rule 12(b)(1) can be made through a facial attack or a factual attack.

19 *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  A "factual" attack, like the one presented

20 here, "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside

21 the pleadings."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "If the moving party

22 converts 'the motion to dismiss into a factual motion by presenting affidavits or other evidence

23 properly brought before the court, the party opposing the motion must furnish affidavits or other

24 evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'"  *Wolfe*, 392

25

26 _____
   [6]  That Plaintiffs Daniels and Dunlap failed to preserve their old devices does not necessarily explain
27 why TWC does not have any location data associated with these plaintiffs.  Daniels and Dunlap both
   appear to have files from 2016 on their devices, well before the 2019 and 2020 release dates of their
28 respective iPhones.  Exs. 12 13, 14–17 (SEALED).  It is possible that Plaintiffs did not actually
   agree to share their location data with TWC during this period, or that TWC did not collect location
   data from Plaintiffs Daniels and Dunlap during this period.

F.3d at 362.  The court may review "evidence beyond the complaint without converting the motion into a motion for summary judgment."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Generally, the inquiry critical to determining the existence of standing under Article III of the Constitution is "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'"  *Allen v. Wright*, 468 U.S. 737, 750–51 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Three basic elements must be satisfied: (1) an "injury in fact," which is particularized and concrete, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Spokeo*, 136 S. Ct. at 1548.  If the plaintiff fails to show standing by establishing these elements, then "an Article III federal court [] lacks subject matter jurisdiction over the suit . . . [and] the suit should be dismissed under Rule 12(b)(1)."  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

## IV.  ARGUMENT

### A.  Plaintiffs Lack Standing To Challenge TWC's Alleged Conduct Because There Is No Evidence That TWC Collected Their Location Data During The Class Period

Plaintiffs lack standing because they have failed to demonstrate that they suffered an injury-in-fact that is "particularized" and "concrete."  *TransUnion*, 141 S.Ct. at 2204; *Spokeo*, 136 S. Ct. at 1548.  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted).  That is, each Plaintiff must show that he "personally has suffered" some harm because of TWC's conduct.  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation omitted).  And that harm must rise to the level of a "concrete" injury— one that "actually exist[s]," is "real," and is "not 'abstract.'"  *Spokeo*, 136 S. Ct. at 1548 (citation omitted); *TransUnion*, 141 S.Ct. at 2204.

Plaintiffs' remaining claims all rest on the premise that TWC collected, maintained and shared their location data for advertising purposes before TWC changed its disclosures in January

1    2019.  *Supra* § II.  However, because (1) TWC does not have any location data associated with any

2    of Plaintiffs' Advertising IDs, (2) TWC does not have location data associated with Plaintiffs' TWC

3    IDs in its systems from before January 25, 2019 (*supra* § II(A)(2)), and (3) the one Plaintiff for

4    whom TWC does have location data (post-March 2019) was using a version of the TWC App that

5    presented the updated disclosure that disclosed the use and sharing of location data for advertising

6    purposes (*id.*), Plaintiffs lack standing to challenge these alleged practices.

7         A court in this district dismissed a putative class action based on a similar set of facts in

8    *Foster v. Essex Property, Inc.*, No. 5:14-cv-05531-EJD, 2017 WL 264390, at *3 (N.D. Cal. Jan. 20,

9    2017).  In that case, plaintiffs alleged that they were injured as a result of security breaches to Essex's

10   computer network because their credit card and other personal information had been stored on

11   Essex's systems.  *Id.* at *1.  In support of its motion to dismiss for lack of standing, Essex submitted

12   sworn declarations establishing that the breach "could not have resulted in the disclosure of personal

13   information about Plaintiffs because there is no personal information about Plaintiffs that is or was

14   stored on the system that was the subject" of the breach.  *Id.* at *2 (internal brackets omitted).  Based

15   on Essex's sworn declarations, the court dismissed the case for lack of standing under Rule 12(b)(1)

16   because Plaintiffs' allegations were "factually impossible":

17        These declarations undermine the allegations critical to Plaintiffs' Article III
          standing.  Specifically, the descriptions of what information was collected from
18        Plaintiffs, and what does and does not exist on Essex's internal computer system,
          contradict the factual claims that Essex induced Plaintiffs to provide it with credit
19        card information and kept Plaintiffs' PII on the network that was ultimately breached.
          Since [Essex's declarants] state that Plaintiffs' credit card information was never
20        collected and that their PII was never stored on the internal computer system in any
          event, the allegation that cyber criminals obtained Plaintiff's PII through a breach of
21        Essex's internal system is factually impossible.

22   *Id.* at *3–4; *see also Burns v. Mammoth Media, Inc.,* No. CV 20-04855, 2021 WL 3500964, at *2–

23   4 (C.D. Cal. Aug. 6, 2021) (dismissing data breach class action for lack of standing under Rule

24   12(b)(1) where defendant's sworn declarations established that "the Mammoth data breach could

25   not possibly have caused the risk of identity theft, fraud, and attendant harms alleged in the FAC").

26        Because TWC has presented evidence contesting the truth of Plaintiffs' factual allegations

27   that TWC collected, stored, and shared their location data, the burden now shifts to Plaintiffs to

28   present "affidavits or other evidence necessary to satisfy [their] burden of establishing subject

1   matter jurisdiction.'"   *Wolfe*, 392 F.3d at 362 (internal quotation omitted).  Plaintiffs cannot meet

2   their burden.  The only evidence Plaintiffs have is their own conclusory allegations that they

3   *agreed* to share their location data with TWC prior to January 25, 2019 (on the "Only While Using

4   the App" setting), which are not enough.   *Foster,* 2017 WL 264390, at *3 (dismissing complaint

5   for lack of standing where plaintiffs offered only conclusory allegations in response to defendants'

6   sworn declarations); *Burns*, 2021 WL 3500964, at *4 (dismissing complaint for lack of standing

7   where plaintiff "failed to meet his burden to respond to Defendant's evidence with any competent

8   proof").

9        Because Plaintiffs cannot demonstrate that TWC collected their location data during the

10  class period, their case should be dismissed for lack of standing pursuant to Rule 12(b)(1).

11         **B.**     **Plaintiffs Lack Standing To Challenge TWC's Alleged Conduct Because They**

12                **Acknowledge That, To The Extent They Shared Location Data, They Did So On**
                      **The "Only While Using The App" Setting**

13        Even if Plaintiffs could prove that TWC collected their location data during the class

14  period—which they cannot for the reasons explains above—their claims should still be dismissed

15  for lack of standing because Plaintiffs' interrogatory responses separately confirm that Plaintiffs did

16  not suffer the harms alleged in the FAC.

17        A Rule 12(b)(1) dismissal is appropriate where, as here, Plaintiffs cannot establish that they

18  actually suffered the harms that they assert on behalf of the class.  *TransUnion*, 141 S.Ct. at 2208–

19  09 (dismissing claim for lack of standing as to class members who were not affected by the alleged

20  conduct because "*[e]very* class member must have Article III standing in order to recover individual

21  damages") (emphasis added); *Birdsong v. Apple, Inc*., 590 F.3d 955, 960–61 (9th Cir. 2009)

22  (dismissing claim for lack of standing where plaintiffs alleged that Apple's iPods posed an "an

23  unreasonable risk of noise-induced hearing loss" but plaintiffs did not establish that they had used

24  their iPods "in a way that exposed them to the alleged risk of hearing loss"); *Winters v. Ridgewood*

25  *Indus., LTD*., No. 2:20-cv-00092 WBS KJN, 2020 WL 3035217, at *2–3 (E.D. Cal. Jun. 5, 2020)

26  (dismissing claim for lack of standing where plaintiffs alleged that drawers were "made defectively,

27  rendering [them] unstable and causing them to tip over," but plaintiffs had not established that their

28  drawers had "malfunctioned or otherwise failed to do anything it was designed to do").

Plaintiffs' claims rest on the premise that TWC tracked Plaintiffs' location constantly, "on a minute-by-minute and sometimes second-by-second basis, regardless of whether the user currently has the Weather Channel App open." FAC ¶ 35; *id.* ¶ 49 (California Constitutional privacy claim: "Plaintiffs and class members had a legally protected privacy interest *in their exact location 24 hours per day, 365 days per year*") (emphasis added), *id.* ¶ 41 (Unjust enrichment: "By collecting and transferring the geolocation data of Plaintiffs and the class members to third parties, TWC has intruded on these interests in a way that cannot be undone; the bell to advertisers as to the *user's exact, constantly-updated location* has been forever rung"), ¶ 53 (incorporating allegations from ¶¶ 37–44), *id.* ¶ 68 (Declaratory judgment: "The California Constitution and California law prohibits the *constant tracking* of persons without their consent.") (emphasis added). However, these allegations are demonstrably false as they pertain to Plaintiffs, in two ways.

*First*, as discussed above, all three named Plaintiffs have submitted verified interrogatory responses stating that they shared location with TWC only "while using the TWC App." *Supra* § II(C). Thus, even assuming that TWC had collected Plaintiffs' location data—and there is no evidence that it did during the alleged class period—Plaintiffs' interrogatory responses acknowledge that TWC would have collected location data only while Plaintiffs were actively using the TWC App. Partin Decl. ¶ 15. On the "Only While Using the App" setting, TWC could not have collected Plaintiffs' location "24 hours per day, 365 days per year" on a "minute-by-minute and sometimes second-by-second basis"—unless Plaintiffs were actively using the TWC App 24 hours per day.

*Second*, when a user has elected to share their location on the "Only While Using the App" setting, the iOS operating system prevents TWC from continuously accessing location information when a user stops using the App regardless of whether they have closed the App or not. Partin Decl. ¶ 15. Thus, with these sharing settings, it would not be possible for TWC to have collected location information continuously in the background "regardless of whether the user currently has the Weather Channel App open," as Plaintiffs allege. *Id.*

Plaintiffs and other putative class members who shared their location on the "Only While Using the App" setting are in a materially different position than the proposed class they describe in their Complaint—who chose to share their location on the "Always" setting—and thus lack

standing for the claims asserted. *TransUnion*, 141 S.Ct. at 2208 ("Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."); *Rivera v. Invitation Homes, Inc.*, No. 18-cv-03158-JSW, 2019 WL 11863726, at *2 (N.D. Cal. June 19, 2019) ("To demonstrate standing, the named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotations omitted).

Further, given Plaintiffs' admission that they only ever shared location data with TWC (if at all) on the "Only While Using the App" setting, their alleged harms do not rise to the level of a California constitutional privacy violation.[7] As explained above, on the "Only While Using the App" location-sharing setting, TWC would collect location data (associated only with pseudonymous identifiers, not Plaintiffs' identities) while Plaintiffs actively used the App. *See supra* at 6; Partin Decl. ¶ 16. This results in sporadic sharing of location data that does not reveal anything about the user that might constitute an "egregious breach of the social norms" or that would be "highly offensive" to the average user. *See In re Google Location History Litigation*, 428 F.Supp.3d 185, 198 (N.D. Cal., 2019) (dismissing California Constitutional privacy claim where Google's collection of location data was "not automatic," did "not happen by the routine 'pinging' of a cell-phone tower," and did not result in "*all* of Plaintiffs movements [] being collected," but rather only "specific movements or locations" depending on "how often [Plaintiffs] use Google's services" because "[s]uch 'bits and pieces' do not meet the [requisite] standard of privacy" for a California Constitutional privacy claim) (emphasis in original).

For example, for Plaintiff Dunlap (the only Plaintiff for whom TWC has *any* location data), during the period March 17, 2019 to October 30, 2020, TWC received approximately 506 pings of location data (less than one ping per day). Partin Decl. ¶ 16. Contrary to Plaintiffs' allegations,

---

[7] In order to prove a California Constitutional privacy violation, Plaintiffs must establish that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 601 (9th Cir. 2020).

such sporadic location data could not possibly be used to track Plaintiffs "from their homes to their places of work, their schools, their daycares, and their churches," as Plaintiffs allege. FAC ¶ 6. Moreover, Plaintiffs indisputably *consented* to sharing their location data with TWC when they were using the App—they admit they affirmatively chose that setting. Put simply, users (like Plaintiffs) who gave TWC permission to access their location while using the TWC App cannot establish that they had a reasonable expectation of privacy in their location while using the TWC App. *In re Google,* 428 F.Supp.3d at 198; *see also Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (dismissing California Constitutional privacy claim in part because plaintiffs "do not allege that Facebook tracked this city data after users had logged out. Facebook is said to have collected it only while plaintiffs were using the app."); *Moreno v. San Francisco Bay Area Rapid Transit District*, No.17-cv-02911-JSC, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 4, 2017) (dismissing California Constitutional privacy claim despite allegations that app "periodically" accessed data while the application was not in use: "In this age of mobile technology the Court cannot conclude that a reasonable user would consider it highly offensive or egregious that a voluntarily downloaded mobile application which utilizes the user's cell phone identifier and location data when the app is in use, also 'periodically' accesses that anonymous data while the application is not in use.").

Finally, Plaintiff Dunlap (the only Plaintiff for whom TWC has *any* location data) was using a version of the App for which the location-access permission prompt disclosed that TWC uses and shares location data to, *inter alia*, provide "geographically relevant advertising." Partin Decl. ¶ 14.

Because Plaintiffs cannot establish that they personally suffered the harms on which their claims are based, their case should be dismissed for lack of standing pursuant to Rule 12(b)(1).

## V.       CONCLUSION

TWC respectfully requests that the Court dismiss Plaintiffs' Amended Complaint with prejudice, in its entirety, on the ground that Plaintiffs lack standing.

1   DATED:  October 15, 2021        QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3                                   By _____
                                           /s/ Stephen A. Broome
4                                   Attorney for Defendant TWC Product and Technology LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28